IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| EMILY PATERSON,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.;<br>and JPMORGAN CHASE BANK, N.A.,<br><br>Defendants. | Civil Action No. 1:24-cv-345 |

**COMPLAINT**

Plaintiff Emily Paterson, by counsel, files this Complaint against Defendants Experian Information Solutions, Inc. ('Experian") and JPMorgan Chase Bank, N.A. ("Chase") (collectively, "Defendants"). In support of her claims, Ms. Paterson alleges as follows:

**PRELIMINARY STATEMENT**

1. This is an action for statutory, actual, and punitive damages; costs; and attorneys' fees brought pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681–1681x.

2. Ms. Paterson is the victim of identity theft, which "has emerged" as "one of the fastest growing white-collar crimes in the United States." *Sloane v. Equifax Info. Services, LLC*, 510 F.3d 495, 505 (4th Cir. 2007). Surveys have shown that "between 1998 and 2003, approximately 27.3 million adults discovered they were the victims of identity theft, with 9.91 million adults discovering they were victims in 2003 alone." *Id.*

3. The FCRA "provides the primary recourse for victims of identity theft." Christopher P. Couch, *Forcing the Choice Between Commerce & Consumers: Application of the FCRA to Identity Theft*, 53 Ala. L. Rev. 583, 587 (2002).

4. The FCRA's purpose is to require consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681.

5. To achieve this purpose, the FCRA sets out requirements and obligations that consumer reporting agencies must follow when consumers dispute the accuracy of the information reported in their credit reports. *Id.* Thus, the FCRA holds the credit reporting agencies and furnishers responsible for taking reasonable steps to correct a consumer's credit report once she brought the theft to the agency's attention. *See Sloane*, 510 F.3d at 506–07 ("Of course, Equifax bore no responsibility for the initial theft, but the FCRA makes the company responsible for taking reasonable steps to correct Suzanne's credit report once she brought the theft to the company's attention; this Equifax utterly failed to do.").

6. Ms. Paterson's identity was stolen by her ex-business associate, who opened credit cards accounts in the name of Ms. Paterson's business. Ms. Paterson does not and has never had access to those accounts. Five of those accounts were with Chase, and one falsely identified Ms. Paterson as a personal guarantor. As a result of that identity theft, Ms. Paterson's credit reports included a Chase credit card debt—attributed to Ms. Paterson individually—that she did not incur and that she did not benefit from.

7. When Ms. Paterson disputed that personal debt with Experian, it and Chase failed to adequately investigate her disputes or remove the fraudulent account from her reports.

8. As a result, Ms. Paterson alleges claims against Experian for: (1) violating the FCRA, §1681e(b), by failing to reasonably ensure the maximum possible accuracy of her credit reports; and (2) violating the FCRA, §1681i, by failing to fully investigate Ms. Paterson's disputes.

9. Ms. Paterson also alleges claims against Chase for violating the FCRA, § 1681s-2(b)(1), by failing to properly investigate her disputes and to review all relevant information provided by the consumer reporting agencies.

## JURISDICTION AND VENUE

10. This Court has jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 168lp.

11. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Ms. Paterson's claims occurred in this District, where she resides.

## PARTIES

12. Ms. Paterson is a natural person residing in this District and Division and a consumer as defined by 15 U.S.C. § 1681a(c) and 15 U.S.C. § 1692a(3).

13. Experian is a foreign corporation authorized to do business in Virginia through its registered offices in Richmond. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

14. Chase is a national bank authorized to do business in Virginia through its registered offices in Henrico County. It is a "furnisher" as governed by the FCRA.

## FACTS

15. In early 2023, Ms. Paterson learned from her Experian credit report that Chase was reporting a credit card account that she did not open or use and from which she received no benefit.

16. Ms. Paterson disputed that account via an online dispute with Experian in or around early February 2023.

17. Upon information and belief, Experian forwarded notification of Ms. Paterson's online dispute to Chase.

18. In response, Chase failed to adequately investigate Ms. Paterson's dispute. Instead, it merely conducted a cursory search of its records and confirmed the same information that it previously reported to Experian.

19. When Experian received Chase's response to Ms. Paterson's dispute, it relied entirely on Chase's investigation. Experian did not conduct any other investigation into Ms. Paterson's dispute.

20. The account, therefore, remained on Ms. Paterson's Experian credit report, which Experian communicated to Ms. Paterson via a denial letter dated February 9, 2023.

21. Troubled by that decision, Ms. Paterson contacted Chase directly on or about February 12, 2023, at which time she explained that she was the victim of identity theft and that she did not incur the debt that Chase was attributing to her through its inaccurate credit reporting. Ms. Paterson also informed Chase that she did not have access to that account and that she never did.

22. Chase then advised Ms. Paterson that it no longer considered her responsible for the account.

23. Chase further told Ms. Paterson that it would remove the account from her credit reports.

24. In or around June 2023, Ms. Paterson discovered that the debt was still reporting on her Experian report.

25. Ms. Paterson again contacted Chase, which advised her that the credit card was one of five opened in the name of Ms. Paterson's business.

26. Ms. Paterson informed Chase that neither she nor anyone with authority to do so had opened those credit card accounts.

27. To be sure, only Ms. Paterson—as majority owner—had authority to open credit accounts in her business's name.

28. Upon information and belief, one of those five credit cards (the one that is subject of this lawsuit) appeared on Ms. Paterson's personal credit report because the identity thief—purporting to be Ms. Paterson—personally guaranteed the debt.

29. Ms. Paterson, of course, neither signed up for that credit card nor agreed to bear responsibility for it as a guarantor. Ms. Paterson also did not use or benefit from that credit card.

30. Chase's reporting, thus, was inaccurate.

31. In August 2023, Ms. Paterson learned that the identity thief was her ex-business associate, who stole her identity through a sophisticated scheme using fake email addresses and personal identifying information that he obtained through his employment.

32. On or about October 5, 2023, Ms. Paterson disputed the account again, this time via written letter to Experian.

33. That letter explained that Ms. Paterson was the victim of fraud perpetrated by her ex-business associate and that she did not owe the debt he incurred in her name. Ms. Paterson's letter further provided information regarding a police report filed in relation to the identity theft.

34. Upon information and belief, Experian forwarded notification of Ms. Paterson's second dispute to Chase.

35. In response, Chase again failed to adequately investigate Ms. Paterson's dispute and merely performed a cursory search of its records that confirmed the same information that it had previously reported to Experian.

36. When Experian received Chase's response to Ms. Paterson's dispute, it again relied entirely on Chase's investigation. As before, Experian did not conduct any other investigation into Ms. Paterson's dispute.

37. The account, therefore, remained on Ms. Paterson's Experian credit report.

38. Ms. Paterson sent two more written disputes on or about November 21 and December 22, 2023.

39. The December letter even attached the police report referenced in the other disputes.

40. Upon information and belief, Experian forwarded notification of Ms. Paterson's third and fourth disputes to Chase, but Chase and Experian again both failed to reasonably investigate the matter on both occasions.

41. As a result, the inaccurate information remained on Ms. Paterson's Experian credit report.

42. As of the date of this filing, the inaccurate Chase account remains on Ms. Paterson's Experian credit report.

43. As a result of Defendants' conduct, Ms. Paterson has suffered significant actual damages, including a decreased credit score, the inability to obtain credit, embarrassment, humiliation, and emotional distress.

### *Defendants' FCRA Violations Were Willful*

44. As a standard practice, Experian does not conduct independent investigations in response to consumer disputes. Instead, it merely parrots the response of the furnisher despite several court decisions admonishing this practice. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a

6

'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230–31 (D. N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at \*6 (S.D.N.Y. Nov. 19, 2008).

45. Upon information and belief and consistent with its standard policies and procedures, Experian automatically generated its "investigation" results once Chase verified the status of the account, and it did not take any extra actions to verify the accuracy of the information that the furnisher provided.

46. Instead, Experian blindly accepted Chase's version of the facts and continued to report the inaccurate, derogatory information on Ms. Paterson's credit report.

47. Experian continues the practice of parroting the furnisher's response despite several lawsuits alleging (and establishing) that it fails to conduct reasonable investigations under the FCRA.

48. Experian does not intend to modify its dispute-processing procedures because doing so would drastically increase its operating expenses.

49. As a result, at all times relevant to this Complaint, Experian's conduct was willful and carried out in reckless disregard for a consumer's rights under the FCRA. By example only and without limitation, its conduct was willful because it ran a risk of harm that was known, or so obvious it should have been known, by failing to implement any procedure to identify and correct these common errors before furnishing reports.

50. Chase's processing of consumer disputes was also willful and carried out in reckless disregard for consumers' rights under the FCRA. For example, Chase's conduct was willful because it was intentionally accomplished through intended procedures that prioritize efficiency over accuracy.

51. In addition, the willfulness of Chase's FCRA violations can be established by, for example:

   a. Congress enacted the FCRA in 1970, and Chase has had over 50 years to become compliant;

   b. Chase is a company with access to legal advice through its own general counsel and outside litigation counsel. Yet there is not contemporaneous evidence that Chase determined that its conduct was lawful;

   c. Chase knew, or had reason to know, that its conduct contradicted the FCRA's plain language, regulatory guidance, and the relevant case law;

   d. Chase voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading of the statute that was merely careless;

   e. Chase's FCRA violations were repeated and systematic;

   f. Chase had substantial documentation available to it that apprised it of its duties under the FCRA but still chose not to comply with the statute; and

   g. Chase had notice of its defective dispute processing procedures through internal audits and litigation but chose not to meaningfully change its policies and procedures to comply with the FCRA.

**COUNT ONE:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681e(b)**
**(EXPERIAN)**

52. Ms. Paterson incorporates the preceding allegations.

53. Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Ms. Paterson's credit reports and credit files that it published and maintained.

54. Because of Experian's conduct, Ms. Paterson suffered actual damages, including, without limitation, a decreased credit score, the inability to obtain credit, embarrassment, humiliation, and emotional distress.

55. Experian's conduct in violating § 1681e(b) was willful, rendering it liable to Ms. Paterson for actual damages, statutory damages, punitive damages, costs, and attorneys' fees under 15 U.S.C. § 1681n.

56. In the alternative, Experian was negligent, entitling Ms. Paterson to a recovery under 15 U.S.C. § 1681o.

**COUNT TWO:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681i**
**(EXPERIAN)**

57. Ms. Paterson incorporates the preceding allegations.

58. Experian violated multiple sections of § 1681i, including but not limited to: (1) failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate in violation of § 1681i(a)(1); (2) failing to provide Chase with all the relevant information about Ms. Paterson's disputes in violation of § 1681i(a)(2); (3) failing to review and consider all relevant information submitted by Ms. Paterson in violation of §1681i(a)(4); (4) failing to promptly delete the disputed inaccurate items of information from Ms. Paterson's credit file or modify the item of information upon a lawful reinvestigation of § 1681i(a)(5)(A).

59. Because of Experian's violations of §1681i, Ms. Paterson suffered actual damages, including, but not limited to, a decreased credit score, the inability to obtain credit, embarrassment, humiliation, and emotional distress.

60. Experian's violations of § 1681i were willful, rendering it liable to Ms. Paterson for actual damages, statutory damages, punitive damages, costs, and attorneys' fees under 15 U.S.C. § 1681n.

61. In the alternative, Experian was negligent, entitling Ms. Paterson to a recovery under 15 U.S.C. § 1681o.

**COUNT THREE:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(A)**
**(CHASE)**

62. Ms. Paterson incorporates the preceding allegations.

63. On one or more occasion within the past two years, Chase violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Ms. Paterson's disputes.

64. When Ms. Paterson disputed the account with the credit bureaus, Chase used a dispute system named "e-Oscar," which is an automated system that the consumer-reporting agencies have developed to quickly transmit disputes to furnishers.

65. E-Oscar is an automated system, and the procedures used by the credit reporting agencies are systematic and uniform.

66. E-Oscar's dispute processing is systemic and uniform: when the credit reporting agencies receive consumer disputes, they (usually via an outsourced vendor) translate each dispute into an automated consumer dispute verification ("ACDV") form.

67. Upon information and belief, the ACDV form is way that Chase has elected to receive consumer disputes under 15 U.S.C. § 1681i(a).

68. Upon information and belief, the credit reporting agencies forwarded Ms. Paterson's disputes by ACDVs.

69. Chase understood the nature of Ms. Paterson's disputes when it received the ACDV forms.

70. Upon information and belief, when Chase received ACDV forms containing Ms. Paterson's disputes, it followed a standard and systematically unlawful process where it only reviewed its own internal computer screen for the account and repeated back the same information to the ACDV system that was previously reported to the credit reporting agency.

71. Upon information and belief, when Chase receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether there is information already in its computer system that would demonstrate the disputed information is misleading or inaccurate.

72. Because of Chase's violation of 15 U.S.C. § 1681s-2(b)(1)(A), Ms. Paterson suffered actual damages, including a reduced credit score, embarrassment, humiliation, stress, and other emotional distress.

73. Chase's conduct in violating 15 U.S.C. § 1681s-2(b)(1)(A) was willful, rendering it liable to Ms. Paterson for punitive damages under 15 U.S.C. § 1681n.

74. In the alternative, Chase was negligent, entitling Ms. Paterson to a recovery under 15 U.S.C. § 1681o.

**COUNT FOUR:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(B)**
**(CHASE)**

75. Ms. Paterson incorporates the preceding allegations.

76. On one or more occasion within the past two years, Chase violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the credit reporting agencies.

77. As Ms. Paterson detailed in the previous Count, Chase has elected to use the e-Oscar system for its FCRA disputes from the consumer reporting agencies.

78. When it received the ACDV forms from the credit-reporting agencies, Chase did not review any of the information that Ms. Paterson included in her dispute, which demonstrated that Chase's reporting of the account was inaccurate.

79. If Chase had reviewed this information, it would have known that its previous reporting was incorrect and needed to be updated.

80. Chase also ignored the other information that the consumer-reporting agencies provided on Ms. Paterson's disputes, including the two-digit dispute code that the agencies listed on the ACDV form.

81. Chase knew the meaning of the dispute codes used by the consumer-reporting agencies in e-Oscar.

82. Chase does not contend that the ACDV system is an inadequate means to receive FCRA disputes from the consumer-reporting agencies.

83. Chase understood Ms. Paterson's disputes and that she was disputing that she owed the claimed amount to Chase.

84. Despite this, Chase did not update its incorrect reporting regarding the account and continued to report the inaccurate information about Ms. Paterson.

85. Because of Chase's 15 U.S.C. § 1681s-2(b)(1)(B) violations, Ms. Paterson suffered actual damages, including a decreased credit score, embarrassment, humiliation, and other emotional distress.

86. Chase's violations of 15 U.S.C. § 1681s-2(b)(1)(B) were willful, rendering it liable for damages under 15 U.S.C. § 1681n.

87. In the alternative, Chase was negligent, entitling Ms. Paterson to recover damages under 15 U.S.C. § 1681o.

WHEREFORE, Ms. Paterson demands judgment for actual, statutory, and punitive damages against Defendants as pleaded above; her attorneys' fees and costs; prejudgment and post-judgment interest at the judgment rate; and any other relief the Court finds appropriate.

**PLAINTIFF DEMANDS A JURY TRIAL.**

Respectfully submitted,
**EMILY PATERSON**

By:   */s/ Kristi C. Kelly*
Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
J. Patrick McNichol, VSB #92699
Matthew G. Rosendahl, VSB #93738
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
Email: pat@kellyguzzo.com
Email: matt@kellyguzzo.com

*Counsel for Plaintiff*